Mitchell MARKS, et al.

v.

INDEPENDENCE BLUE CROSS.

Civil Action No. 98–3528.

United States District Court,
E.D. Pennsylvania.

Sept. 29, 1999.

Ann Miller, Donovan Miller LLC, Philadelphia, PA, for Plaintiffs.

Tracy L. Zurzolo, Morgan, Lewis and Bockius, Philadelphia, PA, Marc J. Sonnenfeld, Paul J. Greco, Morgan, Lewis and Bockius, LLP, Philadelphia, PA, for Defendant.

## *MEMORANDUM*

BARTLE, District Judge.

Plaintiffs allege that defendant Independence Blue Cross ("IBC") breached its fiduciary duty under the Employment Retirement Security Income Act ("ERISA"), 29 U.S.C. §§ 1104, 1109 and that IBC participated in a prohibited transaction under ERISA, 29 U.S.C. §§ 1106, 1108. Plaintiffs' second amended complaint also contains a claim under the Racketeer Influenced and Corrupt Organizations Act, 18 U.S.C. §§ 1961–1968, as well as various pendant state law counts. Before the court is the motion of IBC for summary judgment on the two ERISA claims.

We may grant summary judgment only if there is no genuine issue of material fact and the moving party is entitled to summary judgment as a matter of law. *See* Fed.R.Civ.P. 56(c); *Celotex Corp. v. Catrett,* 477 U.S. 317, 323, 106 S.Ct. 2548, 91

L.Ed.2d 265 (1986). We review all evidence in the light most favorable to the non-movant. *See Wicker v. Consolidated Rail Corp.*, 142 F.3d 690, 696 (3d Cir.), *cert. denied* —— U.S. ——, 119 S.Ct. 530, 142 L.Ed.2d 440 (1998).

Plaintiffs are trustees and participants in an employee welfare benefit plan, Paper Converters Local 286 Welfare Trust Fund (the "Fund"). Since 1992, the Fund and IBC, a health insurer, have entered into agreements annually under which IBC provided health insurance for the employees of the Fund's participating employers in exchange for monthly premiums.

Each year, before the contract was executed, IBC proposed a new premium structure based on the claims utilization of the previous year. Provider discounts as approved by the Pennsylvania Department of Insurance, entitled "hospital" or "plan-wide" discounts, were part of this proposed structure. After receiving "Rate Sheets" which outlined these proposals, representatives of the Fund would negotiate with IBC to set the actual premiums.

### I.

Plaintiffs contend that IBC breached its fiduciary duty under ERISA by failing to mention substantial, extra discounts it received from medical providers when it calculated the premiums it proposed to charge the Fund for health insurance. In other words, plaintiffs contend that IBC, through misrepresentations, caused them to pay more than they otherwise would or should have paid.

■ IBC is not named as a fiduciary of the Fund. Yet it may still be liable for breach of a fiduciary duty, if it meets the definition of a fiduciary under ERISA:

[A] person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, ... or (iii) he

has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). Under this definition, "[d]iscretion is the benchmark for fiduciary status." *Maniace v. Commerce Bank of Kansas City*, 40 F.3d 264, 267 (8th Cir.1994); *see Curcio v. John Hancock Mutual Life Insurance Co.*, 33 F.3d 226, 233 (3d Cir.1994). An ERISA fiduciary, however, has a duty only "to the extent" it exercises discretion. The supporting regulation reiterates this limitation:

A fiduciary ... who is not a named fiduciary is a fiduciary only to the extent that he or she performs one or more of the functions described in [section 1002(21)(A) ]. The personal liability of a fiduciary who is not a named fiduciary is generally limited to the fiduciary functions, which he or she performs with respect to the plan.

29 C.F.R. § 2509.75–8, FR–16A; *see Brandt v. Grounds*, 687 F.2d 895, 897 (7th Cir.1982); *see e.g., Kerns v. Benefit Trust Life Insurance Co.*, 992 F.2d 214, 216–17 (8th Cir.1993). In order to hold IBC liable for breach of a fiduciary duty, plaintiffs must establish that (1) IBC performed discretionary functions for the plan, and (2) those particular functions are related to the breach of duty claimed by plaintiffs. *See e.g., Fechter v. Connecticut General Life Ins. Co.*, 800 F.Supp. 182, 197 (E.D.Pa.1992). In other words, there must be a nexus between the breach and the discretionary authority exercised. *See AT & T v. Empire Blue Cross & Blue Shield*, No. 93–1224, pp. 8–14 (D.N.J. filed July 19, 1994).

Plaintiffs offer a litany of activities which, they claim, IBC performed with discretionary authority and responsibility, including: (1) the amount of money paid to the medical providers; (2) the amount of money kept in the Fund's reserve accounts; (3) record-keeping; (4) notification of participants of the amount owed and the amount spent; and (5) the processing of insurance claims. These various activities

can be divided into those that concern IBC's control over plan assets and those that relate to IBC's administration or management of the plan.

■ In evaluating plaintiffs' position that IBC controlled plan assets, it must be emphasized that the Fund is a fully insured employee welfare plan, not a self-funded plan. Under the latter, it would be the Fund that retains the risk of providing and paying for health benefits for its participants. In contrast, in a fully-insured arrangement with a health insurance company such as IBC, the risk is passed from the Fund to the insurer. In this case, the Fund paid IBC premiums for which IBC agreed to provide health benefits under an insurance policy. Through this exchange, the Fund shifted the risk from itself to IBC. Consequently, the money IBC used to pay the medical providers was the money IBC received in consideration for insuring the Fund's participants. IBC was exercising control over its own assets, not those of the Fund.

Plaintiffs also argue that IBC exercised control over the plan assets because IBC's decisions affected the amount of money the Fund maintained in a reserve account. Carlo Simone, Sr., the Fund's office manager responsible for the day-to-day running of the Fund, explained that the collective bargaining agreement between Local 286 and the participating employers required a reserve "equal to three times the sum of the monthly cost of all benefits provided." (Simone Decl. ¶ 5). Plaintiffs maintain that an increase in premiums paid to IBC required a corresponding increase in the Fund's reserves. IBC, however, has no direct control over the level of reserves required. As noted above, that ratio is determined exclusively by the collective bargaining agreement. The latter also dictates how the reserve funds are spent. IBC has no authority over the money in the reserve account.

IBC simply had no control or authority over any of the Fund's assets. It managed and controlled only its own money. We reject the plaintiffs' contention that IBC was an ERISA fiduciary because it "exercise[d] authority or control respecting the management or disposition of [the plan's] assets." 29 U.S.C. § 1002(21)(A)(i).

■ Plaintiffs next argue that IBC was a fiduciary to the Plan because it exercised the requisite discretion and control over the Plan's administration. 29 U.S.C. § 1002(21)(A)(iii). In this respect, plaintiffs assert that IBC provided notifications to the Fund and its participants, kept records, and processed claims.

There is no evidence before us that IBC's notification functions involved discretion or control sufficient to render IBC a plan fiduciary. The Department of Labor regulations state that "a person who performs purely ministerial functions ... is not a fiduciary because such a person does not have discretionary authority or control." 29 C.F.R. § 2509.75–8, D–2. "Ministerial functions" include "[p]reparation of employee communications material; ... [ ][p]reparation of reports required by government agencies; ... [and][p]reparation of reports concerning participants' benefits." *Id.* The record establishes that IBC creates and provides notifications to Plan beneficiaries only if the Plan asks for them. (Park Dep. 105:20–106:17). In short, IBC performed this notification function "within a framework of policies, interpretations, rules, practices and procedures made by other persons." 29 C.F.R. § 2509.75–8, D–2A. Thus, IBC cannot be a fiduciary for notifying participants of their benefits or the amount paid to providers.

We turn to other aspects of plan administration. The Summary Plan Description for the Fund states, "The Trustees shall have the sole and absolute discretion to determine eligibility for benefits under the Plan and to construe and interpret the plan of benefits.... Any construction, interpretation or application of the Plan by the Trustees shall be final, conclusive and binding ... on any person claiming benefits." The Summary Plan Description,

however, must be read in conjunction with the program descriptions and the parties' contracts. Those documents appear to give IBC control over the claims appeal procedure. Specifically, IBC notifies participants if their claims have been denied. IBC provides participants with a "fuller explanation of the rejection" of claim denials by means of a 1–800 telephone number. Finally, IBC determines the outcome of a claims appeal. The record also contains evidence that IBC performed record-keeping as part of its claims processing. Record-keeping that involves "administering the day-to-day aspects of ... claims review procedures" can establish fiduciary status. *Sixty–Five Security Plan v. Blue Cross and Blue Shield of Greater New York,* 583 F.Supp. 380, 387–88 (S.D.N.Y. 1984).

Even assuming that IBC exercised discretion over certain of the plan's administrative functions, it does not become liable as an ERISA fiduciary unless there is a nexus between the alleged breach and the discretionary authority exercised. Therefore, we must "ask whether [IBC] is a fiduciary with respect to the particular activity at issue." *Coleman v. Nationwide Life Insurance Co.,* 969 F.2d 54, 61 (4th Cir.1992). In this case, the breach of fiduciary duty alleged is IBC's failure to disclose or pass on the full benefits of all discounts that IBC was receiving from medical providers. Plaintiffs essentially claim that IBC did not negotiate a fair and accurate rate of premiums with the Fund. There are no allegations that IBC has failed to cover properly or pay the claims of the plan participants. That IBC might have exercised discretion or control over the processing of claims or the keeping of records is not dispositive because plaintiffs have not produced any evidence showing a connection between these functions and the breach of fiduciary duty alleged in the second amended complaint.

Contrary to plaintiffs' contention, IBC did not perform a discretionary function with respect to the administration of the plan when it negotiated contract terms. In *Schulist v. Blue Cross of Iowa,* 717 F.2d 1127 (7th Cir.1983), the court held that "[a]s to the terms and conditions upon which it became a[n insurance] provider, [Blue Cross/Blue Shield] entered into an arm's length bargain presumably governed by competition in the marketplace.... [Blue Cross/Blue Shield] was not a fiduciary under ERISA with respect to ... its compensation as a provider of Plan benefits." *Id.* at 1132. Thus, Blue Cross "did not in these respects incur the obligations of a fiduciary." *Id.*

Similarly, the Second Circuit has concluded that a person negotiating a contract with a welfare or health plan

> has no authority over or responsibility to the plan and presumably is unable to exercise any control over the trustees' decision whether or not, and on what terms, to enter into an agreement with [them]. Such a person is not an ERISA fiduciary with respect to the terms of the agreement for his compensation.

*F.H. Krear,* 810 F.2d at 1259. In a similar vein, the same circuit has held that "there was no fiduciary duty under ERISA at that point to negotiate a premium favorable to" a welfare fund. *Srein v. Soft Drink Workers Union, Local 812,* 93 F.3d 1088, 1096 (2d Cir.1996). We agree.

■ IBC proposed to plaintiffs terms under which it would provide medical insurance. The plaintiffs' Fund was free to reject those terms and purchase insurance from another provider. In fact, the Fund threatened to do so. (Def.'s Ex. F at 3; Mahady Decl. ¶ 4). The Fund was also free to request premiums lower than those suggested by IBC, and, again, did so. (Deft's Ex. G; Simone Dep. I at 24:12–19). Succinctly put, contract negotiation is not discretionary plan administration.

Plaintiffs have no evidence that IBC breached any relevant ERISA fiduciary duty with respect to plan assets or plan administration. We will grant IBC's mo-

tion for summary judgment as to Count I of plaintiffs' second amended complaint.

## II.

Count II of plaintiffs' second amended complaint alleges that IBC "has and continues to engage in a transaction prohibited by ... 29 U.S.C. § 1106, and not exempted by ... 29 U.S.C. § 1108(b)(2)."

Section 1106(a) provides, in relevant part, "A fiduciary with respect to a plan shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect ... furnishing of goods, services, or facilities between the plan and a party in interest." 29 U.S.C. § 1106(a)(1)(D). This definition of prohibited transactions, however, is limited under a section of ERISA, entitled "Exemptions from prohibited transactions." 29 U.S.C. § 1108. It states in relevant part:

> The prohibitions provided in section 1106 of this title shall not apply to ... [c]ontracting or making reasonable arrangements with a party in interest for office space, or legal, accounting, or other services necessary for the establishment or operation of the plan, if no more than reasonable compensation is paid therefor.

29 U.S.C. 1108(b)(2). To enforce these prohibitions, ERISA allows a civil action to be brought "by a participant, beneficiary, or fiduciary (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter." 29 U.S.C. § 1132(a)(3).

As noted above, IBC has not breached any relevant fiduciary duty under ERISA. Plaintiffs, however, complain that IBC is a party in interest to a prohibited transaction and is liable under ERISA for this reason. "The term 'party in interest' means, as to an employee benefit plan ... a person providing services to such plan." 29 U.S.C. § 1002(14)(B). Plaintiffs maintain that IBC was party to an agreement for the direct furnishing of services which resulted in more than reasonable compensation for IBC. In sum, by failing to pass on the full amount of the discounts it received from medical providers, the Fund purportedly overpaid IBC for health insurance.

■ As an initial matter, IBC contends that as a party in interest and not a fiduciary, it cannot be held liable for its participation in any alleged prohibited transactions. See Harris Trust and Savings Bank v. Salomon Brothers, Inc., 184 F.3d 646 (7th Cir.1999). This contention, however, ignores the applicable case law in this circuit. In Reich v. Compton, 57 F.3d 270 (3d Cir.1995), the Third Circuit held that the Secretary of Labor "can bring an action ... against a nonfiduciary who participates in a transaction prohibited" by ERISA. Id. at 286. Although its holding specifically addressed the Secretary's ability to bring a civil action under section 1132(a)(5), the court noted that it saw "no reason to distinguish between [section 1132(a)(3) ] and [section 1132(a)(5) ] on this issue." Id. at 286 n. 21; see Mertens v. Hewitt Associates, 508 U.S. 248, 260, 113 S.Ct. 2063, 124 L.Ed.2d 161 (1993). Thus, a party in interest to a prohibited transaction, as well as a plan's fiduciary, is subject to liability under ERISA.

■ ERISA's provisions concerning prohibited transactions seek to prevent plan fiduciaries from "engaging in certain types of transactions that had been used in the past to benefit other parties at the expense of the plans' participants and beneficiaries." Compton, 57 F.3d at 275; see Lockheed Corp. v. Spink, 517 U.S. 882, 888, 116 S.Ct. 1783, 135 L.Ed.2d 153 (1996). Section 1106 fulfills this purpose in two parts. Section 1106(b) outlines per se prohibitions against self-dealing transactions that have a "high probability of corruption and loss of plan assets." Kouba v. Joyce, No. 83 C 451, 1987 WL 33370, at *4 (N.D.Ill.Dec.31, 1987); see 29

U.S.C. § 1106(b). Section 1106(a) forbids "sweetheart" deals between fiduciaries and parties in interest to an ERISA plan. Significantly, however, it only outlaws transactions such as "furnishing of . . . services . . . between the plan and a party in interest" where the fiduciary "knows or should know" that they are prohibited. *Id.; Kouba*, 1987 WL 33370, at *4.

 Plaintiffs have not alleged, much less produced any evidence, that the Fund's fiduciaries knew or should have known that the agreements with IBC for the provisions of health insurance were unreasonable under §§ 1106(a) and 1108. In fact, plaintiffs consistently deny having actual or constructive knowledge that their transactions with IBC were prohibited. They allege that IBC's receipt of unreasonable compensation was concealed from them. According to plaintiffs, they did not know and should not have known: (1) that IBC received additional discounts from their providers; (2) that the premium proposals did not include these greater discounts; or (3) that IBC was retaining those greater discounts for themselves. Nowhere do plaintiffs assert that "sweetheart" deals or self-dealing on the part of the Fund was involved.

Whether IBC's conduct turns out to be wrongful under some other statute or legal principle is not now before us. Plaintiffs have not alleged or produced any evidence of a prohibited transaction as defined under § 1106 of ERISA. ERISA's "detailed enforcement scheme provides 'strong evidence that Congress did not intend to authorize other remedies that it simply forgot to incorporate expressly.'" *Mertens*, 508 U.S. at 254, 113 S.Ct. 2063 (quoting *Massachusetts Mutual Life Insurance Co. v. Russell*, 473 U.S. 134, 146–47, 105 S.Ct. 3085, 87 L.Ed.2d 96 (1985)). We decline, therefore, to rewrite or expand ERISA's prohibited transactions provisions to eliminate the "knows or should know" language of § 1106(a).

Accordingly, we will also grant IBC's motion for summary judgment as to Count II of plaintiffs' second amended complaint.

## ORDER

AND NOW, this 29th day of September, 1999, for the reasons set forth in the accompanying Memorandum, it is hereby ORDERED that:

(1) the motion of defendant Independence Blue Cross for summary judgment as to Counts I and II of plaintiffs' second amended complaint is GRANTED; and

(2) judgment is entered in favor of defendant Independence Blue Cross and against plaintiffs Mitchell Marks, Joseph Liberatore, John Corabi, and Paper Converters Local 286 Welfare Trust Fund on Counts I and II of plaintiffs' second amended complaint.