

1997 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-9-1997

# Connell v. Trustees Ironworker

Precedential or Non-Precedential:

Docket 96-5047

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1997

Recommended Citation

"Connell v. Trustees Ironworker" (1997). *1997 Decisions.* Paper 151.
http://digitalcommons.law.villanova.edu/thirdcircuit_1997/151

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova University School of Law Digital Repository. It has been accepted for inclusion in 1997 Decisions by an authorized administrator of Villanova University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed July 9, 1997

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 96-5047

PHILLIP J. CONNELL; CHARLES NELSON,
Appellants

v.

TRUSTEES OF THE PENSION FUND OF THE
IRONWORKERS DISTRICT COUNCIL OF NORTHERN NEW
JERSEY; THE NORTHERN DISTRICT COUNCIL OF
IRONWORKERS, and its Constituent Local Unions

On Appeal From the United States District Court
for the District of New Jersey
(D.C. Civ. No. 92-cv-01655)

Argued: January 21, 1997

Before: NYGAARD, LEWIS, Circuit Judges, and
SCHWARZER, Senior District Judge*

(Filed July 9, 1997)

_____

*The Honorable William W Schwarzer, Senior District Judge for the
Northern District of California, sitting by designation.

JOHN A. CRANER, ESQUIRE
 (ARGUED)
Craner, Nelson, Satin & Scheer,
 P.A.
320 Park Avenue, P.O. Box 367
Scotch Plains, New Jersey 07076
Attorney for Appellants Phillip J.
Connell and Charles Nelson

JOSEPH R. PAGANO, ESQUIRE
 (ARGUED)
Jardine & Pagano, P.A.
11 Cleveland Place
Springfield, New Jersey 07081
Attorney for Appellees Trustees of the
Pension Fund of the Ironworkers
District Council of Northern New
Jersey and the Northern District
Council of Ironworkers and its
Constituent Local Unions

**OPINION OF THE COURT**

SCHWARZER, Senior District Judge.

In this appeal we are again called on to interpret the
"actual knowledge" requirement in ERISA's statute of
limitations in an action for breach of fiduciary duty. See 29
U.S.C. § 1113(a)(2)(A); see also Kurz v. Philadelphia Elec.
Co., 96 F.3d 1544 (3d Cir. 1996); International Union of
Electronic Workers v. Murata Erie North America, Inc., 980
F.2d 889 (3d Cir. 1992); Gluck v. Unisys Corp., 960 F.2d
1168 (3d Cir. 1992).

Phillip Connell, who worked as an ironworker in covered
employment[1] nearly continuously between 1962 and 1993,
and Charles Nelson, who has worked as an ironworker in
covered employment periodically since 1951, brought this

_____

1. According to the Fund's pension plan booklet," `Covered Employment'
consists of the jobs for which contributions are made to the pension
fund [by the employer]."

2

action against the Pension Fund of the Ironworkers District Council of Northern New Jersey (the "Fund"). The Fund manages the pension plan established under a collective bargaining agreement between employers and the Northern District Council of Ironworkers (whose locals are affiliated with the International Association of Bridge, Structural & Ornamental Ironworkers, AFL-CIO) (the "Union"). Connell and Nelson claim that the Fund acted arbitrarily and capriciously in violation of 29 U.S.C. §§ 186(c)(5) and 1104 when it enforced its break-in-service rule, which provides for cancellation of accrued pension credits after a specified absence from covered employment, thereby canceling their previously earned credits.2 The Fund contends, among other things, that because Connell and Nelson failed to file their action within three years of receiving actual notice that certain of their pension credits were canceled, the action is barred by the ERISA statute of limitations.

Connell worked as an ironworker from 1962 to 1968 and again from 1971 to 1993. He testified at trial that he first knew that he had lost certain pension credits as a result of his break in service when he received a credit statement from the District Council in 1981. Connell then consulted his pension plan book and found the break-in-service rule. He went to see his business agent to complain and then called the Fund representative, who "quoted the broken-service [sic] rule, that if you're out three years and you aren't vested . . . you lose the credit for those years you had in." Appellee's Br. at 13 (quoting Connell's testimony at trial).

_____

2. Connell and Nelson also claimed that the Union's discriminatory hiring practices, see Ironworkers, Local 373, 232 NLRB 504 (1977), enf'd sub nom., NLRB v. International Ass'n of Bridge, Structural & Ornamental Ironworkers, Local 373, 586 F.2d 835 (3d Cir. 1978); Moore v. Local 483, International Ass'n of Bridge, Structural & Ornamental Ironworkers, 66 N.J. 527 (1975), diminished their capacity to earn a decent living as ironworkers and that their breaks in service were therefore involuntary and subject to an equitable exception to the break-in-service rule. See, e.g., Knauss v. Gorman, 583 F.2d 82 (3d Cir. 1978) (holding that enforcement of a break-in-service clause was arbitrary and capricious where employment hiatus was caused by involuntary unemployment and inability to find covered work). In view of our disposition of this appeal, we do not reach this claim.

3

Nelson worked off and on as an ironworker between 1951 and 1973. He worked continuously outside the trade between 1973 and 1984. In 1984, Nelson resumed ironwork and remains in covered employment today. He testified that he first found out he had lost his pre-1974 pension credits about 1981 or 1982, when he received a document from the District Council stating that his credits for prior years of service had been canceled because he had two breaks in service. He contacted a union representative after receiving the notice of cancellation. As he said at trial,"That's when I thought I better find out about this whole thing." Appellee's Br. at 13 (quoting Nelson's testimony at trial).

After a bench trial, the district court ruled in favor of the Fund, finding that the claims were not time-barred but that application of the break-in-service rule to Connell and Nelson was not arbitrary and capricious because they voluntarily left covered employment when jobs were available with notice that such departures would cause their pension credits to be canceled. Connell and Nelson appeal the district court's decision.3 We have jurisdiction of the appeal under 28 U.S.C. § 1291 and AFFIRM, albeit on different grounds.

DISCUSSION

The claims of Connell and Nelson against the Fund for breach of fiduciary duty arise under 29 U.S.C. §§ 186(c)(5) and 1104(a)(1)(A)(i).4 ERISA's statute of limitations, 29

---

3. The dissent suggests that we have disregarded the factual findings underlying the district court's disposition of the Fund's statute of limitations defense. We do not question the district court's findings, but we nevertheless "exercise[ ] a plenary standard of review when applying legal precepts to undisputed facts." Easley v. Snider, 36 F.3d 297, 300 (3d Cir. 1994). We therefore review de novo the district court's decision whether to apply 29 U.S.C. § 1113(a)(2) on the facts before it.

4. Nelson also purports to state a claim under 29 U.S.C. § 1132(a)(1)(B) (permitting an action to be brought by a beneficiary "to clarify his rights to future benefits under the terms of the plan"). No such claim exists independent of his claim for breach of fiduciary duty--i.e., Nelson's only claim for "future benefits" arises out of his contention that the Fund, by canceling credits under its break-in-service rule, breached its fiduciary

U.S.C. § 1113(a)(2)(A), applies to claims arising under both of these statutory provisions.5 See Struble v. N.J. Brewery Emp. Welfare Trust Fund, 732 F.2d 325, 331-32 (3d Cir. 1984). That section provides in relevant part:

No action may be commenced . . . with respect to a fiduciary's breach of any . . . obligation . . . after the earlier of--

(1) six years after (A) the date of the last action which constituted a part of the breach or violation . . . or . . .

(2) three years after the earliest date on which the plaintiff had actual knowledge of the breach or violation . . . .

29 U.S.C. § 1113(a). We have held that "Section 1113 sets a high standard for barring claims against fiduciaries prior to the expiration of the section's six-year limitations

_____

duty in violation of §§ 186(c)(5) and 1104. Under the facts of this case, § 1132(a)(1)(B) does not create a right to relief distinct from that arising under §§ 186(c)(5) and 1104. And even if Nelson were able to state a claim under § 1132(a)(1)(B), the claim would be time-barred. New Jersey's statute of limitations for contract actions, which would apply, see Kennedy v. Electricians Pension Plan, 954 F.2d 1116, 1120 (5th Cir. 1992) (quoting Johnson v. State Mut. Life Ass. Co., 942 F.2d 1260, 1262 (8th Cir. 1991); see also National Iranian Oil Co. v. Mapco Int'l, Inc., 983 F.2d 485, 492 (citing Johnson with approval as an example where state statute of limitations was applied to federal statute that lacked a time bar), is six years. N.J. Stat. Ann. § 2A:14-1. As Nelson had notice of his forfeited credits in 1981 or 1982, the statute began to run on that date, and whatever cause of action he might have had under § 1132(a)(1)(B) was barred after 1987 or 1988.

5. Connell and Nelson claim that we may not consider the Fund's statute of limitations argument because the Fund failed to cross-appeal from the district court's adverse ruling on that issue. Their contention is without merit. Because the Fund "seek[s] to sustain th[e] judgment [below] . . . there was no need for a cross appeal." Reserve Ins. Co. v. Brokerage Surplus Corp., 570 F.2d 487, 491 (3d Cir. 1978) (citing 9 Moore's Practice ¶ 204.11(3) (2d ed.)); see United States v. American Ry. Exp. Co., 265 U.S. 425, 435 (1924) (stating that "it is likewise settled that the appellee may, without taking a cross-appeal, urge in support of a decree any matter appearing in the record, although his argument may involve an attack upon the reasoning of the lower court").

5

period." Gluck v. Unisys Corp., 960 F.2d 1168, 1176 (3d Cir. 1992).6 " `[A]ctual knowledge of a breach or violation' requires that a plaintiff have actual knowledge of all material facts necessary to understand that some claim exists, which facts could include . . . knowledge of a transaction's harmful consequences . . . ." Id. at 1177 (citations omitted).

A breach may occur without a plaintiff's having suffered actual harm. Ziegler v. Connecticut General Life Ins. Co., 916 F.2d 548, 551 (9th Cir. 1990). Plaintiffs' complaint that the Fund's cancellation of their pension credits under the break-in-service rule is arbitrary and capricious sufficiently alleges a claim for breach of fiduciary duties. See Knauss v. Gorman, 583 F.2d 82 (3d Cir. 1978). If a breach was committed, it therefore must have occurred upon cancellation of the credits; by the terms of the plan, accrued credits were canceled immediately after a break-in-service exceeded the period specified by the plan (i.e., in 1971 for Connell and in 1964 and 1978 for Nelson).

In Gluck we held that mere knowledge of amendments of the employer's benefit plan, the effect of which was to cause accrued benefits not to fully vest upon partial termination, could not be deemed actual knowledge of a violation of the technical provisions of ERISA. We noted that:

the company literature distributed to employees . . . described [the amendments] as improving participants' benefit packages. . . . For a participant to have discerned a cause of action for partial termination at that time . . . may have required a review of the plan document and of the plan's balance sheet . . . a level of research and scrutiny inconsistent with section 1113's actual knowledge standard.

Gluck, 960 F.2d at 1179. We remanded for a determination of "when each employee had actual knowledge of all

_____

6. The Fund does not contend that the action is barred by the six-year statute. It is clear that if the forfeiture of pension credits under the break-in-service rule resulted in a breach of fiduciary duties, the last action constituting a part of that breach did not occur until payment of reduced pension benefits to the beneficiaries.

6

material facts relevant to a partial termination claim," having emphasized, however, "that our holding does not mean that the statute of limitations can never begin to run until a plaintiff first consults with a lawyer." Id. at 1177.

Following Gluck, we held in International Union of Electronic Workers v. Murata Erie North America, Inc., 980 F.2d 889, 900 (3d Cir. 1992), that beneficiaries who had notice of a plan amendment but were not informed that the amendment provided for reversion of excess funds to the employer lacked actual knowledge of a breach. As we then said, Murata "failed to make the showing of actual knowledge necessary to meet the `stringent requirement' imposed by . . . 29 U.S.C. 1113[(a)](2)." Id. at 901 (citing Gluck, 960 F.2d at 1176).

Recently, we held that where a company decides to make a material change to its pension plan but misrepresents its intent to make such a modification, the statute of limitations will begin to run once an employee knows of the change in benefits and of his own ineligibility. See Kurz v. Philadelphia Elec. Co., 96 F.3d 1544, 1551 (3d Cir. 1996). In Kurz, we found that plaintiffs' knowledge of the change in plan was sufficient to begin the running of § 1113(a)(2) because:

This was not a technical violation of ERISA, nor a cleverly concealed plan amendment. PECo openly announced that certain employees would receive better benefits, and others would not.

Id. Similarly, the plaintiffs in this case were aware of the Fund's break-in-service rule and were aware that it had already been applied to them.

It is undisputed that Connell and Nelson knew as early as 1981 or 1982 that the Fund had canceled their pension credits by applying the break-in-service rule and that the Fund's actions would diminish their future benefits. Like the plaintiffs in Kurz, their actual knowledge of both the alleged breach and the consequential injury they would thereby suffer gave them "knowledge that a fiduciary duty [may have] been breached or ERISA provision violated." Gluck, 960 F.2d at 1178. Indeed, both Connell and Nelson felt sufficiently aggrieved by the Fund's actions to question

7

their union representatives. Thus by 1981 or 1982, Connell and Nelson had "actual knowledge of all of the [material] elements of the violation," Gluck, 960 F.2d at 1176, including knowledge of the harmful consequencesflowing from the cancellation of the credits. See International Union, 980 F.2d at 901; Gluck, 960 F.2d at 1177, 1179. There was nothing left for them to discover and nothing more for them to do but to file suit or to seek legal counsel. As we stated in Kurz, "the `harmful consequences' .. . were obvious." Kurz, 96 F.3d at 1551 (citation omitted).7 Their action, having been filed more than three years after 1982, is therefore time-barred.

The judgment is AFFIRMED.

_____

7. The dissent's hypothetical concerning a pair of ironworkers discriminated against on the basis of their nonunion status has no bearing here. Unlike the dissent's hypothetical plaintiffs, who were unaware that they had lost pension credits because they were not union members, Connell and Nelson clearly knew in 1981 or 1982 of the break-in-service rule, of the union's discriminatory practices, of their own employment histories, and of the effect of the rule's application to them. The hypothetical, sound as it may be on its own terms, is therefore not relevant to the facts of this case.

8

LEWIS, Circuit Judge, concurring and dissenting.

I agree with the majority's conclusion that the district court's judgment should be affirmed. I write separately, however, because I disagree that ERISA's statute of limitations bars the Appellants' claim.

My disagreement lies with the majority's interpretation and application of Gluck v. Unisys Corporation , 960 F.2d 1168 (3d Cir. 1992). In Gluck, we held that "actual knowledge of a breach or violation requires knowledge of all relevant facts at least sufficient to give the plaintiff knowledge that a fiduciary duty has been breached or ERISA provision violated." Gluck, 960 F.2d at 1178. This requires "the district court [to] determine, as a factual matter, the date on which each employee had actual knowledge of the breach or violation." Id. at 1176. Knowledge of the breach is distinguished from knowledge of the actions constituting the breach or violation. See id.; International Union of Electronic Workers v. Murata Erie North America, Inc., 980 F.2d 889, 900 (3d Cir. 1992) (requiring a showing "that plaintiffs actually knew not only of the events that occurred which constitute the breach or violation but also that those events supported a claim of breach of fiduciary duty or violation under ERISA").

Noting Gluck's "stringent" actual knowledge requirement, the district court found that although the pension fund "demonstrated that plaintiffs became aware of their loss of pension credits during 1981," the fund had "failed to demonstrate that [Connell and Nelson] actually knew of their potential ERISA cause of action." Connell v. Pension Fund, Civ. No. 92-1655, slip op. at 16 (D.N.J. Jan. 2, 1996). To support this conclusion, the district court drew certain factual inferences from the testimony presented at the non-jury trial. Specifically, the court found that Connell's failure to take any action after learning of his loss of pension credits other than contacting the plan administrator and Nelson's failure to express any concerns to the plan administrator about the break-in-service rule "clearly indicate[d] that [they] were not aware of their potential cause of action." Id. at 6, 11 & 16.

The majority seems to overlook the district court's factual inferences, concluding:

9

[I]t is undisputed in this case that Connell and Nelson knew as early as 1981 or 1982 that the Fund had canceled their pension credits by applying the break-in-service rule and that the Fund's actions would diminish their future benefits. Their actual knowledge of both the alleged breach and the consequential injury they would thereby suffer gave them "knowledge that a fiduciary duty [may have] been breached or ERISA provision violated."

Maj. Op. at 7 (quoting Gluck, 960 F.2d at 1178) (alteration of Gluck in original). The majority's conclusion does not follow from its premise. Although it was established that Connell and Nelson knew in 1981 or 1982 of the pension fund's action which constituted the alleged breach -- that is, its enforcement of the break-in-service rule -- it does not follow that they had actual knowledge of the breach itself. The majority further notes, again without reference to the district court's findings, that Connell and Nelson must have had " `actual knowledge of all of the [material] elements of the violation' " because they "felt sufficiently aggrieved by the Fund's actions to question their union representatives." Maj. Op. at 8 (quoting Gluck, 960 F.2d at 1178).

As noted earlier, however, the district court reached the exact opposite conclusion from the same facts and testimony cited by the majority. Indeed, the district court found that Connell's and Nelson's actions after receiving notice of their lost pension credits "clearly indicate[d] that plaintiffs were not aware of their potential ERISA cause of action." Connell, Civ. No. 92-1655, slip op. at 16. I would not disregard, as the majority does, the district court's factual determination that Connell's and Nelson's actions, or lack thereof, indicated that they had no knowledge of a breach.

Moreover, contrary to the majority's indication, it is not enough that the plaintiffs have knowledge that a fiduciary duty "may have" been breached or ERISA provision violated. Rather, the plaintiff must have actual knowledge that a fiduciary duty "has" been breached or ERISA provision violated. See Gluck, 960 F.2d at 1178.

While this distinction may seem merely semantic, it is important, as perhaps the following hypothetical will

explain. Assume that Smith and Jones were non-union iron workers who occasionally worked in the iron trade and participated in a multi-employer pension fund that supported both union and non-union workers. In 1981, Smith and Jones received notice that some of their pension credits would be lost because they had incurred breaks in service. Assume further that they questioned a representative of the Fund but were told that the Fund was merely enforcing its break-in-service rule, of which they were on notice. Jones and Smith were upset about their lost credits and may have even assumed that the Fund was treating them unfairly. But, without any other information, Jones and Smith thought that they were just out of luck. Now assume that in 1990, Jones and Smith discovered that the Fund was in practice only applying the break-in-service rule to non-union workers.

Under Gluck, the statute of limitations would start to run in 1990, when Smith and Jones learned that the Fund was discriminating in its enforcement of the break-in-service rule. In other words, the statute would start to run when they possessed knowledge that the enforcement of the break-in-service rule violated ERISA. Under the majority's analysis, which, in my view, relaxes Gluck's "stringent" requirement, Jones and Smith would be barred from bringing their claim because the three-year statute would have started running in 1981 when they first learned that they had lost credits due to their break in service.

The hypothetical discussed above is not that different from the case at hand. Here, Connell and Nelson admit that they knew in 1981 or 1982 that they had lost credits. But they allege that they incurred the breaks in service because the union had discriminated against them in allocating iron work. Thus, if Connell and Nelson could show that they had left the ironworking trade involuntarily, enforcement of the break-in-service rule against them might have constituted a breach of ERISA.[1] Had the union's

_____

1. We recognized in Knauss v. Gorman, 583 F.2d 82 (3d Cir. 1978), that if a plan beneficiary incurs a break in service involuntarily, the pension fund must come forward with a justification for why the rule is enforceable. See also Van Fossan v. International Brotherhood of Teamsters, 649 F.2d 1243, 1248 (7th Cir. 1981) ("We believe the distinction between voluntary and involuntary breaks in service is crucial to determining the arbitrariness of the operation of a given break in service rule.").

11

discrimination forced Connell and Nelson out of the trade involuntarily, and had they not had actual knowledge of the discrimination (say, for example, they thought that they just were unlucky in obtaining work), they would not have possessed the requisite "actual knowledge" of a breach of fiduciary duty or ERISA violation merely when they had been notified of their lost credits. Indeed, they would be lacking "actual knowledge of all material facts constituting [the] breach of fiduciary duty or violation of ERISA [which] is the sine qua non for application of [ERISA's] three-year limitation." Gluck, 960 F.2d at 1177.

Put simply, then, the actual knowledge requirement is necessarily intertwined with the cause of action or the theory of the breach. See Martin v. Consultants & Administrators, Inc., 966 F.2d 1078 (7th Cir. 1992) (courts must take into account "the complexity of the underlying factual transaction, the complexity of the legal claim and the egregiousness of the alleged violation").

At bottom, a determination of what the plaintiffs knew and when is a very fact-intensive inquiry. See Gluck, 960 F.2d at 1176 (requiring the district court to determine "as a factual matter" when the statute began to run). I cannot agree with the majority's disregard of the inferences that the district court drew from the facts here.

A True Copy:
Teste:

Clerk of the United States Court of Appeals
for the Third Circuit

12