William F. **GASHLIN**, Plaintiff,

v.

The **PRUDENTIAL INSURANCE COMPANY OF AMERICA RETIREMENT SYSTEM FOR THE UNITED STATES EMPLOYEES AND SPECIAL AGENTS**, et al., **Defendants**.

No. CIV.A. 01–3563(WHW).

United States District Court,
D. New Jersey.

Sept. 4, 2003.

Frederick Conrad Biehl, III, Soriano, Henkel, Salerno, Biehl & Matthews, PC, Roseland, NJ, for Plaintiff.

John James Peirano, Jr., Carpenter, Bennett & Morrissey, Newark, NJ, for Defendants.

## OPINION

WIGENTON, United States Magistrate Judge.

Plaintiff William F. Gashlin ("Mr. Gashlin") initiated this action against Defendants The Prudential Merged Retirement Plan (formerly known as "The Prudential Insurance Company of America Retirement System for the United States Employees and Special Agents) (the "Retirement Plan") and The Prudential Insurance Company of America (collectively "Prudential") pursuant to the Employee Retirement Income Security Act of 1974, as amended, 29 U.S.C. § 1001 *et seq.* ("ERISA" or the "Act")." Mr. Gashlin seeks recovery of additional retirement benefits under the Retirement Plan. The parties have cross-moved for summary judgment.

The parties have consented to the Court's jurisdiction pursuant to 28 U.S.C. § 636(c) and *Fed.R.Civ.P.* 73. The Court has jurisdiction over this matter in accordance with 29 U.S.C. § 1131.

For the reasons set forth below, Mr. Gashlin's motion for summary judgment is denied, and Prudential's motion for summary judgment is granted.

## I. *The Retirement Plan*

The Retirement Plan is a defined benefit pension plan covered by ERISA.[1] Doc. 28 at WG00303; Doc. 29 at WG00355; Doc. 30 at WG00378; Doc. 31 at WG00403; Doc. 32 at WG00423. The Retirement Plan generally provides that, upon retirement, participants receive a life annuity payable to them in monthly installments. Doc. 28 at WG00305–16; Doc. 33 at WG00499. The amount of the annuity payable under the Retirement Plan depends upon, *inter alia,* the participant's number of years of "Credited Service" and "Continuous Service." Doc. 28 at WG00307–16; Doc. 33 at WG00465 *et seq.* In general, the greater the participant's "Credited Service" and "Continuous Service," the greater the annuity payable to the participant. Doc. 28 at WG00307–16; Doc. 33 at WG00465–71; WG00477 *et seq.*

Section 403 of the Retirement Plan provides that a participant's pre–1976 service with Prudential is "Credited Service" if such service is "Continuous Service." Doc. 33 at WG00466. Section 409 of the Retirement Plan, in turn, defines "Continuous Service" as "... the period from his Adjusted Service Date to such date of determination." Doc. 33 at WG00471. Sections 402(d) and (e) of the Retirement Plan provide that a participant's "Adjusted Service Date," for purposes of determining his "Continuous Service," is the date on which the participant commenced his earliest period of service with Prudential, which service has not been excluded under

---

**1.** The facts are undisputed unless otherwise noted.

the Retirement Plan's "Break–In–Service" rules. Doc. 33 at WG00465; Doc. 33 at WG00471. In other words, "Continuous Service" is service that has not been excluded under the "Break–In–Service" rules.

The "Break–In–Service" rules set forth in the 1956 version of the Retirement Plan provided, in pertinent part:

> ... a person whose service is terminated and who later re-enters the service of the Company shall be considered as having had a break in service (*i.e.*, as not having had previous service), unless the Company, on the merits of the case, agrees in writing that he shall be considered as not having had a break in service.

Doc. 37 at WG01050. Prior to the 1976 effective date of ERISA, the "Break–In–Service" rules generally provided that "Continuous Service" was broken and, ultimately, excluded if the participant's break in service exceeded one-year. See Doc. 2 at WG00088.

With the enactment of ERISA, Prudential amended the Retirement Plan's "Break–In–Service" rules. Doc. 36 at WG00932 *et seq.* As amended in 1976, and again in 1985, the Retirement Plan provided, in pertinent part:

Section 408. *Break–In–Service*

If, for any person, with respect to any calendar year:

> (a) his total Vesting Service is greater than 0 at the beginning of the year and less than 10 at the end of the year;
>
> (b) the year is a break year;
>
> (c) his total Vesting Service at the end of the year would, except for this Section, be equal to or less than his total number of consecutive break years [ ]; and

> (d) on and after January 1, 1985, the number of his consecutive break years is at least 5 years,

the person's Service is determined to be broken; his total Vesting Service as of the end of the year is to be excluded; and all Service is ignored except that Service since his last date of affiliation will not be ignored in the case of a person reaffiliated [*sic*] during that calendar year.

Doc. 36 at WG00951. As such, prior service would be restored if: (1) the participant's initial period of service before 1976 was at least ten years in length or (2) the length of the participant's initial period of service exceeded the length of his break in service. Doc. 2 at WG00088. The 1987 version of the Retirement Plan contained the identical "Break–In–Service" rules set forth in the 1976 Retirement Plan. Doc. 35 at WG00811.

When the Retirement Plan was restated effective January 1, 1994, substantially identical "Break–In–Service" rules were adopted:

Section 408. *Break–In–Service*

A Break–in–Service occurs for a Participant with respect to a calendar year if:

> (a) his total Vesting Service is greater than 0 at the beginning of the year and less than five at the end of the year;
>
> (b) the year is a Break Year;
>
> (c) his total Vesting Service at the end of the year would, except for this Section 408, be equal to or less than his total number of consecutive Break Years ...; and
>
> (d) the number of his consecutive Break Years is at least 5 years.

If a Break–in–Service occurs, a Participant's Vesting Service as of the end of the year is to be excluded; and all Service, including Credited Service, prior to

the Break–in–Service is ignored, except that Service since his last date of affiliation will not be ignored in the case of a person reaffiliated [*sic*] during that calendar year.

Doc. 34 at WG00653–4. The 1997 version of the Retirement Plan contained the identical "Break–In–Service" rules set forth in the 1994 restatement of the Retirement Plan. Doc. 33 at WG00470.

## II. *The Summary Plan Description*

The Summary Plan Description ("SPD") issued to participants in the Retirement Plan explained, in pertinent part, the "Break–In–Service" rules as follows:

WHAT IS VESTING SERVICE?

. . . . .

The years of vesting service you have earned can be lost, however, if you incur a "Break in Service", as described below.

. . . . .

WHAT IS A BREAK IN SERVICE?

You will have a "Break in Service" when your consecutive Break Years add up to your years of vesting service. When this happens, all of your vesting service is cancelled. The continuous service you had earned during this time is also cancelled.

However, once your pension is vested, you can no longer incur a Break in Service.

Doc. 1 at WG00036; Doc. 31 at WG00413; Doc. 32 at WG00434.

## III. *Administration of the Retirement Plan*

According to section 2413 of the Retirement Plan, Prudential is the "Plan Administrator." Doc. 33 at WG00550. As Plan Administrator, Prudential has the authority to construe the Retirement Plan's terms and determine eligibility of benefits. Doc. 33 at WG00550. In particular, the Retirement Plan provides that Prudential has:

the full and absolute discretion and authority to control and manage the operation and administration of the Prudential Plan, including, but not limited to, the power to interpret and construe, in its sole discretion, the terms of this Prudential Plan and any related trust agreement, and to determine, in its sole discretion, all questions relating to eligibility to participate in the Prudential Plan, benefits due under the Prudential Plan, the administration of the benefits, rights and features of the Prudential Plan, or appeals under the Prudential Plan.

Doc. 33 at WG00550.

## IV. *Mr. Gashlin's Employment with Prudential*

Mr. Gashlin worked for Prudential from June 1, 1956 through February 28, 1963 ("Prior Service"), a period of 6 years and 9 months. Doc. 1 at WG00001; Doc. 1 at WG00050; Doc. 6 at WG00095. From March 1, 1963 through January 3, 1982, a period of 18 years and 10 months, Mr. Gashlin worked for Bankers National Life Insurance Company and The Penn Mutual Life Insurance Company. Doc. 1 at WG00001; Doc. 1 at WG00049; Doc. 6 at WG00095. Erwin Rode ("Mr.Rode"), Vice President and Actuary at Prudential, and Vernon Ritchey ("Mr.Ritchey"), Vice President Group Contracts at Prudential, recruited Mr. Gashlin to return to Prudential. Doc. 1 at WG00001.

On January 4, 1982, Mr. Gashlin resumed employment with Prudential where he remained until his retirement on August 6, 1999. Doc. 1 at WG00001. During this period, Mr. Gashlin worked at Prudential for a period of 17 years and 6 months. Mr. Gashlin contends that before he resumed employment with Prudential, Mr.

Rode requested that he receive credit for his Prior Service under the Retirement Plan. Doc. 1 WG00001. Human Resources at Prudential denied Mr. Rode's request and provided Mr. Gashlin with a copy of the SPD that is quoted above. Mr. Gashlin Certification ¶ 6. Mr. Gashlin stated:

> Human Resources rejected [Mr. Rode's] request and, after a review of the Pension Booklet, I told [Mr. Rode] not to pursue the request. It was clear to me that I had a break in service for vesting purposes. I didn't want to make waves or request special consideration as a returning employee.

Doc. 1 at WG00001; Doc. 1 at WG00010. Mr. Gashlin contends that while he was not vested at this time, he believed that once he became vested, his Prior Service would be used to calculate his pension benefits. Mr. Gashlin Certification ¶¶ 6–7.

Prudential amended the Retirement Plan to provide for a 5–year vesting period effective January 1, 1989. Doc. 35 at WG00928. Consequently, on February 6, 1989, Mr. Gashlin renewed his request that he receive credit for his Prior Service under the Retirement Plan. Doc. 1 at WG00009. Within such request, Mr. Gashlin claimed that, as he was vested under the Retirement Plan as to his post–1982 service, his Prior Service should be restored. Doc. 1 at WG00010–13.

On April 14, 1989, Prudential advised Mr. Gashlin that his Prior Service would not be restored. Doc. 1 at WG00001; Doc. 1 at WG00015; Doc. 2 at WG00082. Thus, on May 16, 1989, Mr. Gashlin requested that Prudential reconsider its denial of his claim. Doc. 1 at WG00017–18; Doc. 2 at WG00083–84. In response to such request, on June 2, 1989, Prudential advised Mr. Gashlin that:

[his] prior service does not count in the determination of [his] credited years of service under the Retirement Plan.

. . . . .

... with respect to the booklet wording itself, I feel that the phrase "no longer" clearly looks to the future. Once you are vested, you can no longer incur a break in service. I do not think there is an implication there that we will look at all prior service and reinstate it should an employee later return to The Prudential and become vested. Moreover, this is neither the intent of the provision nor is it a requirement under ERISA upon which our service rules are based.

. . . . .

... your prior service had been lost due to the length of the break in service you had incurred by [January 1, 1976]. It is not our practice, nor a legal requirement, to reinstate service once lost.

. . . . .

There are also administrative considerations to liberalizing our current service rules to permit reinstatement. First, we would need to keep service records indefinitely on every employee we hire, no matter how short their stay with us, in the event they should some day return and stay five years. This would increase our record-keeping immensely. Under the current rules, we maintain such records for five years after termination and then discontinue them (unless the employee was already vested). Furthermore, we would have to pay a premium to the Pension Benefit Guarantee Corporation [ ] on behalf of all these former employees for an indefinite period since we could never consider their prior service forfeited. This would cause a significant increase in what is already a sizeable expenditure.

Doc. 1 at WG00021–22; Doc. 2 at WG00086–87.

In May 1991, Mr. Gashlin again requested that his Prior Service be counted toward his final pension benefits. Doc. 1 at WG00020. By memorandum dated May 7, 1991, Prudential advised:

> You have asked for written confirmation that under the terms of Prudential's Retirement Plan (the "Plan") your prior service (1956–63) with Prudential does not count in the determination of your years of credited service under the Plan. This memorandum confirms that decision which was discussed with you. The rationale was outlined in Bill Watson's June 2, 1989, memorandum to you (copy attached) when you previously requested a review of your situation.

Doc. 1 at WG00020. Prudential provided to Mr. Gashlin Retirement Plan documents, including the SPD. Doc. 1 at WG00001–2; Doc. 2 at WG00072–3. Mr. Gashlin forwarded said documents to his attorney, and he decided not to pursue legal action at that time. Doc. 1 at WG00001–2. Mr. Gashlin stated that:

> I obtained a copy of the Plan Documents and turned the entire file, including the Summary Plan Description, over to my personal attorney. He, in turn, sent it to an attorney that specialized in employee benefit law. It was the opinion of my counsel and his referral counsel that we could win a suit, based upon the merits, if we chose to bring suit at that time. However, they both recommended that I wait until my total service with Prudential exceeded my total break in service, before I make another request for the restoration of my prior service.

Doc. 1 at WG00001–2; Doc. 1 at WG00072–73.

On March 21, 1997, Mr. Gashlin renewed his request for credit for his Prior Service under the Retirement Plan. Doc. at WG00001–9; Doc. 2 at WG00072–80. In response, Prudential's Appeals Committee, by letter dated June 2, 1997, advised Mr. Gashlin that he would not receive credit for his Prior Service. Doc. 3 at WG00091. In particular, Prudential advised:

> When [ERISA] ... required that we change our continuous service rules with respect to breaks-in-service beginning after 1975, we decided to voluntarily liberalize our rules for breaks-in-service before 1976 as well. We chose to follow the ERISA rule i.e., service before a break would be reinstated if the break were not as long as the initial period of service. In your case, the break was approximately 19 years which was far greater than your initial period of service which was almost 7 years ...

Doc. 3 at WG00091. On August 1, 1997, Mr. Gashlin re-appealed Prudential's June 2, 1997 decision and, on March 18, 1998, Mr. Gashlin appeared at a hearing held by Prudential's Appeals Committee with respect to his claim. Doc. 4 at WG00092; Doc. 6 at WG00094.

By letter dated May 21, 1998, Prudential's Appeals Committee denied Mr. Gashlin's second appeal. Doc. 6 at WG00094–101. In said letter, Prudential set forth the reasons why Mr. Gashlin was not entitled to restoration of his Prior Service under the Retirement Plan provisions in effect: (1) when Mr. Gashlin left Prudential in 1963 or (2) when Mr. Gashlin returned to Prudential in 1982. Doc. 6 at WG00094–101. In particular, Prudential explained that under the terms of the Retirement Plan in 1982:

> a participant who left [Prudential] service pre–1976, but who returned to service during or after 1976, would have his or her pre-break service counted as accrual service unless the participant's

consecutive break years equaled or exceeded pre-break service (even though the pre-break service had been properly forfeited before 1976).

Doc. 6 at WG00098. Prudential further advised that subsequent amendments and restatements of the Retirement Plan did not otherwise restore the Prior Service that Mr. Gashlin had forfeited under the "Break–In–Service" rules. Doc. 6 at WG00099. Prudential explained that the statement "once your pension is vested, you can no longer incur a Break in Service," contained in the SPD, meant "that a participant cannot incur future breaks in service after becoming vested, but it does not purport to restore break-in-service forfeitures incurred prior to the participant's becoming vested." Doc. 6 at WG00099.

On July 27, 2001, Mr. Gashlin initiated this action against Prudential essentially for credit for his Prior Service under the Retirement Plan.

## V. *Summary Judgment Standard*

A motion for summary judgment will be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed.R.Civ.P.* 56(c). In other words, "summary judgment may be granted if the movant shows that there exists no genuine issue of material fact that would permit a reasonable jury to find for the nonmoving party." *Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir.1988). All facts and inferences must be construed in the light most favorable to the nonmoving party. *See Peters v. Delaware River Port Auth. Of Pa. & N.J.*, 16 F.3d 1346, 1349 (3d Cir. 1994). Substantive law controls the inquiry into which facts are "material." *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

242, 247–48, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). An issue is "genuine" if a reasonable jury could decide the issue in the nonmovant's favor. *Id.* Thus, "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Id.*

The party seeking summary judgment always bears the initial burden of production. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). This requires the moving party to establish either that there is no genuine issue of fact and that the moving party must prevail as a matter of law, or to establish that the nonmoving party has not demonstrated the requisite facts relating to an essential element of an issue on which it bears the burden. *Id.* at 322–23, 106 S.Ct. 2548. Once the party moving for summary judgment has satisfied its initial burden, the burden shifts to the nonmoving party, who in order to avoid summary judgment must demonstrate facts supporting each element for which it bears the burden and it must establish the existence for genuine issues of material fact that would justify a trial. *See Miller v. Indiana Hosp.*, 843 F.2d 139, 143 (3d Cir. 1988).

However, at the summary judgment stage, the court neither weighs the evidence nor makes credibility determinations; those tasks are within the realm of the trier of fact. *See Anderson*, 477 U.S. at 249, 106 S.Ct. 2505. Thus, to establish a genuine issue of material fact, the party opposing summary judgment need not produce evidence so strong that it mandates a decision in its favor. Rather, the party opposing summary judgment must present "evidence on which the jury could reasonably find for the [nonmoving party]." *See Anderson*, 477 U.S. at 252, 106 S.Ct. 2505. "The mere existence of a scintilla of evi-

dence in support of the [nonmoving party's] position will be insufficient." *Id.*

If a moving party satisfies its initial burden of establishing a *prima facie* case for summary judgment, the opposing party "must do more than simply show that there is some metaphysical doubt as to material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). Rather, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Id.* at 587, 106 S.Ct. 1348 (quoting *First Nat'l Bank of Arizona v. Cities Serv. Co.,* 391 U.S. 253, 289, 88 S.Ct. 1575, 20 L.Ed.2d 569 (1968)).

VI. *Standard of Court's Review in ERISA Matters*

■ The Act governs pension plans and authorizes suits against plan administrators and fiduciaries to recover benefits, to enforce rights, or to clarify rights to future benefits under the terms of pension plans. 29 U.S.C. § 1132(a)(1)(B). However, the Act does not provide a standard of review for actions initiated pursuant section 1132(a)(1)(B) for benefits denied under a covered plan. *See Mitchell v. Eastman Kodak Co.,* 113 F.3d 433, 437 (3d Cir.1997). Thus, the Supreme Court has instructed that "a denial of benefits ... must be reviewed under a *de novo* standard unless the benefit plan expressly gives the plan administrator or fiduciary discretionary authority to determine eligibility for benefits or to construe the plan's terms, in which cases a deferential standard of review is appropriate." *Firestone Tire & Rubber Co.,* 489 U.S. at 102, 109 S.Ct. 948. Where a plan administrator or fiduciary has express authority to determine eligibility of benefits under the plan, courts will defer to these determinations

unless they are arbitrary and capricious. *See Firestone Tire & Rubber Co.,* at 111, 109 S.Ct. 948; *see also Hullett v. Towers, Perrin, Forster & Crosby, Inc.,* 38 F.3d 107, 114 (3d Cir.1994) (Third Circuit found that trial court erred in failing to give deference to plan administrator's determination regarding payment of employment benefits under the arbitrary and capricious standard). A court's review is limited to the evidence that was before the plan administrator or fiduciary. *See Mitchell,* 113 F.3d at 440. Under the arbitrary and capricious standard, a plan administrator's decision may be reversed "only if it is without reason, unsupported by the evidence or erroneous as a matter of law." (internal quotations omitted) *Mitchell v. Eastman Kodak Co.,* 113 F.3d 433 (3d Cir.1997) (citations omitted).

■ If a plan administrator or fiduciary is operating under a conflict of interest, such conflict must be weighed as a "factor" under the arbitrary and capricious standard of review. *Firestone,* 489 U.S. at 115, 109 S.Ct. 948. Since *Firestone,* the Third Circuit has delineated how trial courts must apply the heightened arbitrary and capricious standard of review to ERISA claims. The Third Circuit has adopted a "sliding scale" approach to ERISA claims whereby courts "consider the nature and degree of apparent conflicts with a view to shaping their arbitrary and capricious review of the benefits determinations of discretionary decisionmakers [*sic* ]." *See Pinto v. Reliance Standard Life Ins. Co.,* 214 F.3d 377, 393 (3d Cir. 2000). Under this approach, where a plan administrator makes decisions on claims and provides the funds from which those claims are paid—such decisions may be tainted by conflict—and the level of deference afforded to the administrator diminishes. *See Pinto,* 214 F.3d at 390, 393. Essentially, the greater the suspicion of

partiality, the more penetrating the scrutiny. *See Pinto,* 214 F.3d at 392–93.

██ In this matter, Prudential, as the Plan Administrator, has the authority to construe the Retirement Plan's terms and to determine whether Mr. Gashlin is entitled to retirement benefits. However, because Prudential provides the funds from which retirement benefits are paid, its decision concerning Mr. Gashlin's retirement benefits must be reviewed under the heightened arbitrary and capricious standard.

VII. *Benefits Under The Retirement Plan*

██ When Mr. Gashlin left Prudential in 1963, he forfeited his Prior Service. The "Break–In–Service" rules in effect in 1963 provided that unless Prudential agreed in writing to forgive a break in service, a participant whose service is terminated and who later re-joins Prudential shall be considered as having had a break in service (*i.e.,* as not having had previous service). Doc. 37 at WG01050. Prudential has never agreed in writing to forgive Mr. Gashlin's 19–year break in service. Rather, Prudential has maintained consistently that Mr. Gashlin's 19–year break in service severed his continuous service with Prudential, whereby he forfeited credit for his Prior Service.

Mr. Gashlin likewise forfeited his Prior Service under the "Break–In–Service"

rules in effect when he returned to Prudential in 1982 and thereafter.[2] Said "Break–In–Service" rules provided that service would be excluded if the participant's initial period of service before 1976 was less than 10–years in length or the participant's initial period of service did not exceed his break in service. Doc. 36 at WG00951. Clearly, Mr. Gashlin forfeited his Prior Service, approximately 7 years of service, as a result of his 19–year break in service.

The SPD, which Mr. Gashlin has possessed a copy of since 1982, contained "Break–In–Service" rules consistent with the "Break–In–Service" rules set forth in the Retirement Plan in effect in 1982 and thereafter. In particular, the SPD explained that "the years of vesting service you have earned can be lost" if your "consecutive Break Years add up to your years of vesting service. When this happens, all of your vesting service is cancelled. The continuous service you had earned during this time is also cancelled." Doc. 1 at WG00036; Doc. 31 at WG00413; Doc. 32 at WG00434.

Mr. Gashlin argues that the language contained in the SPD should be interpreted to include his Prior Service. According to Mr. Gashlin,

[a]lthough the SPD does not expressly address the rights of an employee that contemplates returning to the employ of Prudential and does not have vested rights to a pension, it does contain lan-

---

**2.** Mr. Gashlin argues that Prudential arbitrarily and capriciously denied him credit for his Prior Service because it based its decision on the 1976 Retirement Plan, and "[e]xcept for the first page of the service rules (WG00947), all of the pages are marked in the lower right corner '76 Plan eff 1/1/85'." Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment at 7. Mr. Gashlin did not raise this argument previously thus, Prudential had not had the oppor-

tunity prior to these motions to address this argument. This argument, however, will not preclude a final decision in this case because Mr. Gashlin failed to demonstrate how any of the amendments or restatements of the Retirement Plan would effect a decision on his claim. As demonstrated above, the 1976, 1985, 1987, 1994 and 1997 versions of the Retirement Plan contain materially similar "Break–In–Service" rules. Thus, this argument is not meritorious, and a genuine issue of material fact does not exist.

guage that literally states that such prior service would be included in determining pension benefits. The last sentence in the paragraph describing Break in Service states: **"However, once your pension is vested, you can no longer incur a Break in Service"**. At that time plaintiff knew he would have to work 10 years to obtain vested rights to a pension and believed that this provision would permit inclusion of his prior service in calculating his total pension benefits once he became vested.

(emphasis in original) Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment at 14. Mr. Gashlin's interpretation of said language is inaccurate and unreasonable as set forth below.

This sentence advises that a participant cannot incur a break in service and, thus, forfeit his vested service after he becomes vested in the Retirement Plan. This sentence cannot be interpreted to mean that service, which has been forfeited, will be restored when a participant vests. Otherwise, prior service, regardless of the length of service, could never be forfeited once a participant vests. Clearly, this sentence is forward-looking, and the terms "you can no longer incur a Break in Service" imply that pre-vesting service can be forfeited.

Mr. Gashlin, however, need not have relied upon his interpretation of the language contained in the Retirement Plan or SPD because Prudential analyzed these documents and explained why he forfeited his Prior Service. Indeed, on April 14, 1989; June 2, 1989; May 7, 1991; June 2, 1997 and May 21, 1998, Prudential advised Mr. Gashlin that he forfeited his Prior Service as a result of his 19–year break in service. Doc. 2 at WG00082; Doc. 1 at WG00021–22; Doc. 1 at WG00020; Doc. 3 at WG00091; Doc. 6 at WG00094–101, respectively.

Contrary to Mr. Gashlin's argument, Prudential's decision to exclude Mr. Gashlin's Prior Service comports with ERISA. Under ERISA, years of service prior to the effective date of ERISA (January 1, 1976) may be disregarded "if such service would have been disregarded under the rules of the plan with regard to breaks in service, as in effect on the applicable date." 29 U.S.C.A. § 1053(b)(1)(F). As stated above, under the amendments and restatements to the Retirement Plan, Mr. Gashlin forfeited his Prior Service.

Prudential's interpretation of the Retirement Plan and SPD and its decision regarding Mr. Gashlin's retirement benefits are well-supported by the record, and no genuine issue of material fact exists in this claim. For the foregoing reasons, Prudential's motion for summary judgment on Count I of the Complaint is granted.

VIII. *Benefits Under Promissory Estoppel*

A retirement plan participant may initiate a suit "... to obtain ... equitable relief ... to redress [ERISA] violations or ... to enforce any provisions of [ERISA] or the terms of the plan." 29 U.S.C. § 1132(a)(3). "To establish a claim for equitable estoppel under ERISA, a plaintiff must prove: (1) a material representation, (2) reasonable and detrimental reliance upon the representation, and (3) extraordinary circumstances." *In Re New Valley Corp.*, 89 F.3d 143, 153 (3d Cir.1996).

A material representation is defined as "any provision of a plan subject to ERISA that establishes a benefit." *Curcio v. John Hancock Mutual Life Insurance Co.*, 33 F.3d 226, 237 (3d Cir.1994).

Reasonable and detrimental reliance is established when a claimant suffers an injury because he reasonably relied upon a material representation. *See Curcio*, 33 F.3d at 237. Although the Third Circuit has not clearly defined extraordinary circumstances, it has "consistently rejected estoppel claims based on simple ERISA reporting errors or disclosure violations, such as a variation between a plan summary and the plan itself, or an omission in the disclosure documents." *Kurz v. Philadelphia Electric Co.*, 96 F.3d 1544, 1553 (3d Cir. 1996). The Third Circuit has determined that affirmative acts of fraud or similarly inequitable conduct by an employer satisfies the extraordinary circumstances factor. *Rosen v. Hotel & Restaurant Employees & Bartenders Union*, 637 F.2d 592, 598 (3d Cir.1981), *cert. denied*, 454 U.S. 898, 102 S.Ct. 398, 70 L.Ed.2d 213 (1981). The Third Circuit has also determined that misrepresentations that are made over an extended course of dealing between parties satisfies the extraordinary circumstances factor. *See Curcio*, 33 F.3d at 238. *See also Smith v. Hartford Ins. Group*, 6 F.3d 131, 142 (3d Cir.1993) (extraordinary circumstances may exist where plaintiff repeatedly and diligently inquired about benefits and defendant repeatedly misrepresented scope of coverage to plaintiff).

### A. *Benefits Under The SPD*

Mr. Gashlin demonstrates "material representation" for his first estoppel claim because the SPD establishes a retirement benefit. However, Mr. Gashlin cannot demonstrate "reasonable and detrimental reliance upon the representation" or "extraordinary circumstances."

▆▆ Mr. Gashlin claims that Prudential represented in the SPD that his Prior Service would be restored when his Prior Service and post–1982 service combined exceeded his total number of break years. The SPD provides:

> You will have a "Break in Service" when your consecutive Break Years add up to your years of vesting service. When this happens, all of your vesting service is cancelled. The continuous service you had earned during this time is also cancelled.

> However, once your pension is vested, you can no longer incur a Break in Service.

Again, in accordance with a plain reading of the SPD, Mr. Gashlin's Prior Service was canceled when his break years exceeded his years of Prior Service. This language does not even suggest that service pre- and postbreak years should be combined once a participant vests. Thus, Mr. Gashlin did not reasonably rely on the SPD.

Further, Mr. Gashlin asserts that the SPD indicates that his Prior Service would be restored once he became vested. Essentially, Mr. Gashlin urges the Court to find that a participant can recoup all prior service once he vests whereby a break in service becomes irrelevant. Such reading of the SPD is unreasonable. Clearly, the language "you can no longer incur a Break in Service" indicates that once Mr. Gashlin vested, he could not, from that point on, incur a break in service.

▆▆ Likewise, Mr. Gashlin fails to establish "extraordinary circumstances." Absent explanation, Mr. Gashlin asserts that "representations in the SPD are found to disagree with the [Retirement] Plan itself (whichever version of the [Retirement] Plan that might be)." Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment at 16. No support exists for this conclusory statement. However, assuming

*arguendo* that support exists, the Third Circuit specifically rejected estoppel claims based on disclosure violations, such as a variation between a plan summary and the plan itself. *See Kurz*, 96 F.3d at 1553. In addition, Prudential informed Mr. Gashlin consistently, as set forth above, that he would not receive credit for his Prior Service. Thus, no extraordinary circumstances exist. For the foregoing reasons, Prudential's motion for summary judgment on Count II of the Complaint is granted.

### B. *Benefits According To Prudential Employees*

Mr. Gashlin demonstrates "material representation" for his second estoppel claim because, again, the SPD establishes a retirement benefit. However, Mr. Gashlin cannot demonstrate "reasonable and detrimental reliance upon the representation" or "extraordinary circumstances."

■ Mr. Gashlin alleges that as a result of his discussions with MM. Rode and Ritchey in 1981, he believed that he would receive credit for his Prior Service. Specifically, Mr. Gashlin claims that Mr. Rode did not disagree with his belief that, according to the SPD, he would receive credit for his Prior Service after working for ten years and becoming vested. Mr. Gashlin asserts that he detrimentally relied on Mr. Rode's "silent agreement" with his interpretation of the SPD.

Mr. Gashlin's reliance on Mr. Rode's "silent agreement" is unreasonable. Mr. Gashlin knew, or should have known, that Mr. Rode had no authority to speak on behalf of Prudential in this matter or to interpret the SPD on behalf of Prudential. Indeed, because Mr. Rode lacked such authority, he contacted Human Resources on Mr. Gashlin's behalf. Doc. 1 at WG00001. And, fully aware of this, Mr. Gashlin told Mr. Rode not to pursue the matter because he did not want special consideration as a returning employee.

■ Likewise, Mr. Gashlin fails to demonstrate "extraordinary circumstances." Absent legal support, Mr. Gashlin contends that "extraordinary circumstances" exist because Mr. Rode and "upper management personnel" agreed with his interpretation of the SPD. Assuming *arguendo* that said employees agreed with Mr. Gashlin's interpretation of the SPD, Mr. Gashlin cannot refute that each time he sought the restoration of credit for his Prior Service, it was denied by Prudential. Prudential did not even once, let alone repeatedly, misrepresent the coverage of the SPD. Thus, no extraordinary circumstances exist. For the foregoing reasons, Prudential's motion for summary judgment on Count III of the Complaint is granted.

### IX. *Statute of Limitations*

■ Mr. Gashlin's benefit and estoppel claims are barred by the statute of limitations. The Act does not provide a statute of limitations for benefits or estoppel claims, thus courts apply state statute of limitations for contract claims. *See Connell v. Trustees of the Pension Fund of the Ironworkers District Council of Northern New Jersey*, 118 F.3d 154, 156 n. 4 (3d Cir.1997). *See also McHenry v. Bell Atlantic Corp.*, 1999 WL 313771 (E.D.Pa. 1999) (applying state statute of limitations for contracts to promissory estoppel claim). New Jersey applies a 6–year statute of limitations period to contract actions. *See* N.J.S.A. § 2A:14–1. As such, to assert timely benefits and estoppel claims, Mr. Gashlin must have filed a suit against Prudential within 6–years of the date on which the claims accrued. The parties strongly disagree as to when the claims accrued.

The Third Circuit has held that a benefits claim under ERISA accrues when there is an outright repudiation of the benefits by the defendant. *Henglein v. Colt Indus. Operating Corp.*, 260 F.3d 201, 214 (3d Cir.2001). *See also Starr v. JCI Data Processing, Inc.*, 767 F.Supp. 633, 638 (D.N.J.1991) (a claim accrues "when a plaintiff becomes aware or reasonably should become aware of the facts underlying the claim."). A promissory estoppel claim under ERISA similarly accrues when the plaintiff is first advised of changes in the benefits that he is to receive under the retirement plan. *See McHenry*, 1999 WL 313771 at * 11.

On June 2, 1989, Mr. Gashlin had actual knowledge that his Prior Service was canceled under the "Break–In–Service" rules. Doc. 1 WG00021–22. *See also* Doc. 1 at WG00001 ("My request was finally rejected in your memorandum dated June 2, 1989."). In particular, Prudential advised Mr. Gashlin that his "prior service had been lost due to the length of the break in service [he] had incurred ..." Doc. 1 at WG00021. Prudential further advised "[i]t is not our practice, nor a legal requirement, to reinstate service once lost." Doc. 1 WG00021. Indeed, at this point in time, Mr. Gashlin consulted an attorney regarding a suit against Prudential. Doc. 1 at WG00001–2. Subsequently, on May 7, 1991, Prudential again advised Mr. Gashlin that his Prior Service was canceled. Doc. 1 at WG00020. Thus, Mr. Gashlin must have filed a suit against Prudential certainly by May 1997. Because Mr. Gashlin filed a suit against Prudential on July 27, 2001, his benefits and promissory estoppel claims are time-barred.

Mr. Gashlin's argument that the statute of limitations did not accrue until his combined years of service with Prudential exceeded his break in service is baseless. Mr. Gashlin asserts that "[i]t was not until

[his] 1997 request was made that all of the factors set forth in the SPD or in Section 408(c) of the Retirement Plan were ripe for determination. Plaintiff's total service then exceeded his total time not in service and, accordingly, he did not have a Break in Service." Brief in Opposition to Defendants' Motion for Summary Judgment and in Support of Plaintiff's Cross Motion for Summary Judgment at 19. Mr. Gashlin's benefits and promissory estoppel claims are time-barred even under this theory.

As noted above, Mr. Gashlin worked at Prudential from June 1, 1956 through February 28, 1963, a period of 6 years and 9 months. Doc. 1 at WG00001; Doc. 1 at WG00050; Doc. 6 at WG00095. From March 1, 1963 through January 3, 1982, a period of 18 years and 10 months, Mr. Gashlin had a break in service. Doc. 1 at WG00001; Doc. 1 at WG00049; Doc. 6 at WG00095. On January 4, 1982, Mr. Gashlin resumed employment with Prudential where he remained until his retirement on August 6, 1999. Doc. 1 at WG00001. During this period, Mr. Gashlin worked at Prudential for a period of 17 years and 6 months. Again, according to Mr. Gashlin, the statute of limitations period did not accrue until his combined years of service exceeded his break in service. Under this theory, however, the 6–year statute of limitations period accrued in 1994 and expired in 2000. For the foregoing reasons, Prudential's motion for summary judgment on Counts I, II and III of the Complaint is granted.

### X. *Breach Of Contract*

Mr. Gashlin asserts that under state common law, Prudential breached its contract of employment because "[Prudential's] offer of employment that included the value of his Prior Service Period was accepted by [Mr. Gashlin] resulting in a contract of employment," and Prudential

refuses to include his Prior Service in his benefits. Complaint ¶¶ 36–37. Mr. Gashlin offers no support for this claim, and he did not address Prudential's motion for summary judgment on this claim.

Under section 1144(a) of ERISA, state common law claims are preempted as they relate to "claim[s] for benefits under the ERISA-regulated benefit plan." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). Clearly, Mr. Gashlin's breach of contract claim relates to benefits under an ERISA-regulated plan. Thus, said claim is preempted by ERISA, and Prudential's motion for summary judgment on Count IV of the Complaint is granted.

## XI. *Information Regarding Other Retirement Plan Participants*

 Prudential has no duty to disclose information regarding other Retirement Plan participants to Mr. Gashlin. Mr. Gashlin seeks the names of former Prudential employees who (1) were credited with prior service notwithstanding a break-in-service; (2) were given an alternative settlement in lieu of credit for their prior service notwithstanding a break-in-service; (3) were given a package, severance, inducement, settlement or buy-out upon termination of employment or retirement, where any part of the funds were paid from pension funds; or (4) had a break-in-service, returned to Prudential and had their request for the restoration of prior service denied for the purpose of computing their aggregate pension benefits by Prudential. Mr. Gashlin contends that 29 U.S.C.A. § 1024(b)(4) mandates production of said information under the category "other instruments under which the Plan is established or operated." Mr. Gashlin asserts that the Retirement Plan administrator's treatment of other similar-

ly situated employees reflects the manner in which the Retirement Plan operates.

The information that Mr. Gashlin seeks falls outside the scope of section 1024(b)(4). Section 1024(b)(4) provides, in relevant part:

> [t]he administrator shall, upon written request of any participant or beneficiary, furnish a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

29 U.S.C.A. § 1024(b)(4). As the Supreme Court has stated:

> [i]n interpreting a statute, the starting point is of course the language of the statute itself. It is to be presumed that "the legislative purpose is expressed by the ordinary meaning of the words used, and if the statutory language is clear, it is not necessary to examine the legislative history."

*Barnes v. Cohen*, 749 F.2d 1009, 1013 (3d Cir.1984) (internal quotations and citations omitted).

Clearly, the Act does not provide for the production of the information that Mr. Gashlin seeks. A plain reading of the Act makes evident that "other instruments under which the plan is established or operated" refers to documents that govern the pension plan and not the personal information of former Prudential employees. In fact, the Act does not even contemplate "instruments" to include the information that Mr. Gashlin seeks.

The Second Circuit agrees that "instruments," as used in the Act, "encompasses formal or legal documents under which a plan is set up or managed." *Board of Trustees of the CWA/ITU Negotiated Pension Plan v. Weinstein*, 107 F.3d 139, 142

(2d Cir.1997). In support of this reading, the Circuit Court found that other sections of the Act also use the term "instruments" to connote formal governing documents. *See Weinstein,* 107 F.3d at 143. For example, section 1104(a)(1)(D) provides, "a fiduciary shall discharge his duties with respect to a plan ... in accordance with the documents and instruments governing the plan," and section 1105(c)(1) provides "[t]he instrument under which a plan is maintained may expressly provide for procedures ... for allocating fiduciary responsibilities." *Weinstein,* 107 F.3d at 143 (quoting 29 U.S.C.A. § 1104(a)(1)(D) and § 1105(c)(1), respectively). Sister Circuits agree. *See Faircloth v. Lundy Packing Co.,* 91 F.3d 648, 654 (4th Cir.1996) ("The clear and unambiguous meaning of this statutory language encompasses only formal or legal documents under which a plan is set up or managed."); *Ames v. American National Can Co.,* 170 F.3d 751, 758 (7th Cir.1999) (Instruments "refers to a specific set of documents: those under which a plan is established or operated.")

■ In further support that the term "instruments" connotes a formal document that governs a pension plan and not personal information concerning other former Prudential employees, Congress has explained that the Act's:

> reporting requirements [are] designed to disclose more significant information about plans and the transactions engaged in by those controlling plan operations and to provide specific data to participants and beneficiaries concerning the rights and benefits they are entitled to under the plans and the circumstances which may result in their not being entitled to benefits.

*Weinstein,* 107 F.3d at 144 quoting H.R.Rep. No. 93–533 (1973), reprinted in 1974 U.S.C.C.A.N. 4639, 4642. If the Legislature intended to give plan participants access to information regarding other plan participants, it would have included such language. Rather, the Legislature limited the scope of Section 1024(b)(4) by designating categories of discoverable information. Mr. Gashlin provides no legal basis for disclosure of personal information concerning other former Prudential employees. For the foregoing reasons, Prudential's motion for summary judgment on Count V of the Complaint is granted.

## XII. *Attorneys' Fees and Costs*

■ The Act provides that "the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). To this end, courts apply a five-factor test to determine whether fees are appropriate under section 1132. *See McPherson v. Employees' Pension Plan of American Re–Insurance Co., Inc.,* 33 F.3d 253, 254 (3d Cir.1994). The factors are: "(1) the offending parties' culpability or bad faith; (2) the ability of the offending parties to satisfy an award of attorneys' fees; (3) the deterrent effect of an award of attorneys' fees against the offending parties; (4) the benefit conferred on members of the pension plan as a whole; and (5) the relative merits of the parties' position." *Id.* As set forth above, Prudential denied Mr. Gashlin credit for his Prior Service in accordance with the Retirement Plan, SPD and ERISA. Thus, Mr. Gashlin's claim for attorneys' fees and costs is denied, and Prudential's motion for summary judgment on Count VI of the Complaint is granted.